## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

IN THE MATTER OF THE SEIZURE OF
UP TO $53,868.12 FROM JPMORGAN
CHASE  ACCOUNT NUMBER 430722392
HELD IN THE NAME OF CHAOYING
ZHANG

No. 1:24-mj-00116-JCN

**FILED UNDER SEAL**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEIZURE WARRANT

I, Pierre Mathieu, being duly sworn under oath, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the U.S. Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), assigned to the Office of the Resident Agent in Charge in Houlton, Maine. I have been employed by HSI, or its predecessor agencies, as a Special Agent since 2016. As part of my duties as a Special Agent with HSI, I investigate criminal violations of federal law, to include violations of the provisions of Title 18, United States Code, Sections 1343 (Wire Fraud), and 1956-57 (Money Laundering). Throughout my law enforcement career I have been trained in and conducted investigations in the areas of white collar crime and financial fraud.

2.      I submit this Affidavit in support of an Application for a seizure warrant pursuant to Title 18, United States Code, Sections 981(b) and 982(b)(1) (incorporating the provisions of Title 21, United States Code, Section 853(f)), **to seize up to $53,868.12 from JPMorgan Chase[1] Account Number**

---

[1] The corporate office of JPMorgan Chase (hereinafter "JPMC") is located in New York, New York. JPMC has branches throughout the District of Maine and elsewhere.

**430722392 (the "Subject Account") held in the name of CHAOYING**

**ZHANG**, which contained $55,533.37 as of March 26, 2024. On the basis of the

facts and information provided herein, such funds are subject to civil and

criminal forfeiture pursuant to Title 18, United States Code, Sections

981(a)(1)(C), 981(a)(1)(A), 981(b), 982(a)(1), 982(a)(2)(A), 982(b), and 984.

    3.    The facts set forth in this affidavit are based on my personal

knowledge, information obtained during my participation in this investigation,

information from others, including law enforcement officers, my review of

documents and records related to this investigation, and information gained

through my training and experience, all of which I believe to be reliable.

Therefore, I submit that probable cause exists to believe that the $55,533.37 held

in the Subject Account includes $53,868.12 constituting the unlawful proceeds or

fungible property[2] of, and/or property involved in, criminal activity. My affidavit

is intended to provide the facts necessary for a determination of probable cause

for the requested seizure warrant.

---

[2] With respect to fungible property, including cash and funds deposited in a financial institution, 18 U.S.C. § 984 provides, in relevant part, that:

    (a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution . . . , or precious metals:

        (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

        (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

    (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

    (b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

4.      As detailed below, I have probable cause to believe and do in fact believe that such property is forfeitable pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), as well as Title 18, United States Code, Section 982.

## APPLICABLE CRIMINAL STATUTES

5.      The wire fraud statute, 18 U.S.C. § 1343, makes it a federal crime for anyone, having devised or intending to devise any scheme and artifice to defraud by means of false or fraudulent pretenses, representations, or promises, to transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

6.      Pursuant to 18 U.S.C. § 1014, the mortgage fraud statute, it is a federal crime to knowingly make any false statement or report for the purpose of influencing in any way the action any institution the accounts of which are insured by the Federal Deposit Insurance Corporation upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan.

7.      Pursuant to 18 U.S.C. § 1957, it is a federal crime to knowingly engage or attempt to engage in a monetary transaction, knowing that the transaction involved property or funds that were the proceeds of some criminal activity, including wire fraud, if the property had a value of more than $10,000, the property was in fact proceeds of that specified unlawful activity, and the transaction took place in the United States.

## APPLICABLE FORFEITURE STATUTES

8. Property constituting, or derived from, proceeds traceable to a violation of 18 U.S.C. § 1343 may be forfeited pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

9. Property constituting or derived from, proceeds traceable to a violation of 18 U.S.C. § 1014 may be forfeited pursuant to 18 U.S.C. § 981(a)(1)(C) and, when the violation is affecting a financial institution, 18 U.S.C. § 982(a)(2)(A).

10. Pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to forfeiture.

11. As property subject to civil forfeiture, the contents of the Subject Account may be seized pursuant to 18 U.S.C. § 981(b)(1). As property subject to criminal forfeiture, the contents of the Subject Account may be seized pursuant to 18 U.S.C. 982(b)(1) (incorporating 21 U.S.C. § 853(f)).

12. Pursuant to 18 U.S.C. § 981(b)(2), the Attorney General may seize property subject to forfeiture under § 981(a)(1)(C) when the Attorney General obtains a warrant "in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure." 18 U.S.C. § 981(b)(3) provides that, "[n]otwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property

4

may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found. . ."

13.     Pursuant to 28 U.S.C. § 1355(b)(1)(A), "[a] forfeiture action or proceeding may be brought in the district court for the district in which any of the acts or omissions giving rise to forfeiture occurred." As discussed herein, acts or omissions giving rise to forfeiture occurred in the District of Maine, and thus, the seizure warrant for funds held by JPMC (a New York-headquartered bank) may be issued by a District of Maine judicial officer. 18 U.S.C. § 981(b)(3) & 28 U.S.C. § 1355(b)(1)(A).

14.     Property subject to civil forfeiture may be seized pursuant to 18 U.S.C. § 981(b), and property subject to criminal forfeiture may be seized pursuant to 21 U.S.C. § 853(f), as incorporated by 18 U.S.C. § 982(b)(1). In cases where the Government is not certain at the time of the seizure if it will pursue civil or criminal forfeiture, courts may issue the seizure warrant under both statutes. The probable cause showing is the same for Sections 981(b) and 853(f), except that the latter also requires a showing that a restraining order "may not be sufficient to assure the availability of the property for forfeiture." Based on my training and experience, I know that restraining orders served on banks sometimes fail to preserve the property for forfeiture because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the money in time to prevent the account holder from accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of set-off to satisfy an outstanding debt owed to the bank by the account holder. In contrast,

where electronic funds are concerned, a seizure warrant guarantees that the funds will be in the Government's custody once the warrant is executed.

15.     In this case, probable cause exists to believe that unlawfully obtained funds were deposited into the Subject Account controlled by JPMC under the name of CHAOYING ZHANG. I have confirmed through recent grand jury subpoena process that the Subject Account appears to be actively in use by CHAOYING ZHANG.

16.     I believe, based on this investigation and my knowledge, training, and experience, that the funds currently held by JPMC represent the proceeds of wire fraud and mortgage fraud perpetrated by CHAOYING ZHANG. Specifically, CHAOYING ZHANG applied for a mortgage through Kennebec Savings Bank ("KSB") to finance the purchase of 1403 Bucksmills Road, in Bucksport, Maine, on the basis of the property being his primary residence. The mortgage application was approved and CHAOYING ZHANG closed on the property using KSB loan funding. The evidence uncovered to date indicates that the property was not intended by CHAOYING ZHANG to be used—or subsequently ever was used—for his residential purposes. CHAOYING ZHANG instead acquired Bucksport, 1403 Bucksmills Road, as an investment property, never resided there, and rented the property to individuals who utilized it as an apparent illegal marijuana grow house.

17.     CHAOYING ZHANG therefore made material misrepresentations on his mortgage loan application and related materials submitted to KSB that Bucksport, 1403 Bucksmills Road, was being financed as his "primary residence." The KSB funding he fraudulently obtained was used to acquire the property in

December 2020. In December 2023, CHAOYING ZHANG sold Bucksport, 1403 Bucksmills Road, and as a result received a $53,868.12 deposit into the Subject Account traceable as proceeds of his wire fraud and mortgage fraud. CHAOYING ZHANG's initial purchase of Bucksport, 1403 Bucksmills Road, as well as his subsequent sale of such property, involved him engaging in monetary transactions which he knew involved the proceeds of his fraud.

### KSB MORTGAGE PROCESS

18.     The mortgage loan at issue progressed through the following KSB financing process.

19.     A Fannie Mae Form 1003 Uniform Residential Loan Application ("1003 Application") is submitted by the borrower. Each 1003 Application is populated by information provided by the borrower, including: (i) type of mortgage and terms of loan; (ii) property information and purpose of loan; (iii) borrower information; (iv) employment information; (v) monthly income and combined housing expense information; (vi) assets and liabilities; (vii) details of transaction; (viii) declarations; and (ix) an acknowledgement and agreement by the borrower.

20.     The declaration section contained in each 1003 Application requires the borrower to answer the questions, "Do you intend to occupy the property as your primary residence?," and, "Is any part of the down payment borrowed?" The acknowledgement and agreement section contained in each 1003 Application requires the borrower to specifically represent to the lender that the information provided in the application is true and correct under penalty of the provisions of Title 18, United States Code, Section 1001. The acknowledgement and agreement section contained in each 1003 Application further requires the borrower to specifically

represent that the property will not be used for any illegal or prohibited purpose or use.

21.     A Borrower's Certification & Authorization form ("Borrower's Certification") is submitted by the borrower, by which the borrower certifies the following:

> (i) In applying for the loan, I/we completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/we omit any pertinent information.

> (ii) I/We understand and agree that Lender reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the Financial Institution.

> (iii) I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

22.     A borrower executes a Promissory Note setting forth the payment terms (interest, payments, term) concerning the lender financing the borrower's purchase of the property.

23.     A borrower executes a security instrument ("Mortgage") detailing the property, sum secured, loan, and any applicable riders, granting and transferring to the lender the borrower's rights in the property. The Mortgage contains additional promises and agreements on the part of the borrower, including the following:

**Occupancy.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**Borrower's Loan Application.** If, during the application process for the Loan, I made false, misleading, incomplete, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan ("Material Information"), Lender will treat my actions as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person giving false, misleading, incomplete, or inaccurate statements about Material Information to Lender. False, misleading, incomplete, or inaccurate statements about Material Information would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, incomplete, or inaccurate statement of Material Information. Also, if during the loan application process I failed to provide Lender with Material Information, Lender will treat this as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person failing to provide Lender with Material Information.

24.   Upon completion and execution by the borrower of all of the above documentation, KSB disburses the residential mortgage loan funding to a closing agent for payment to the seller(s) of the property. The seller thereafter executes a Deed to the borrower, granting the property to the borrower.

25.   KSB is a financial institutions insured by the FDIC. The mortgage loan application and financing instruments at issue, based on interviews with respective bank personnel, contained material, important information, and were

submitted and executed via the Internet and thus were transmitted by means of wire communication in interstate commerce.

## THE INVESTIGATION

26.     On about October 9, 2020, CHAO YING ZHANG electronically submitted a 1003 Application to KSB for a $147,000 conventional fixed-rate (3.7% interest) 30-year mortgage loan to purchase a residence located at 1403 Bucksmills Road, in Bucksport. CHAO YING ZHANG checked the box on the 1003 Application indicating the property would be his primary residence. CHAO YING ZHANG indicated on the 1003 Application that he presently resided in Bayside, New York. In the employment information section, CHAO YING ZHANG indicated that he was employed as a "manager" at "dukers appliance co usa ltd" and also as an Uber driver, with a gross monthly income of $5,000. CHAO YING ZHANG indicated on the 1003 Application that he had $69,000 in a Bank of America account ending in -9893.

27.     In the 1003 Application, CHAO YING ZHANG indicated that the purchase price of Bucksport, 1403 Bucksmills Road, was $210,000 with total costs of $225,354.46, such that he would be paying $65,754.46 as "cash from borrower." In the declarations section, CHAO YING ZHANG answered "Yes" to the question, "Do you intend to occupy the property as your primary residence?," and "No" to the question, "Is any part of the down payment borrowed?" CHAO YING ZHANG executed the acknowledgement and agreement section.

28.     On about October 16, 2020, CHAO YING ZHANG electronically submitted the Borrower's Certification via DocuSign. On about December 10, 2020, CHAO YING ZHANG executed a Promissory Note to pay KSB $147,000. On about December 10, 2020, CHAO YING ZHANG executed a Mortgage before a notary

public in Queens, New York, to KSB containing standard Occupancy and Borrower's Loan Application provisions. A Deed was then granted to CHAO YING ZHANG transferring to him ownership of Bucksport, 1403 Bucksmills Road.

29.     Electricity usage and billing records provided by CMP for Bucksport, 1403 Bucksmills Road, show that CHAO YING ZHANG became the account holder of the property in December 2020, and remained so through January 2022.

30.     CMP's electricity usage and billing records showed as follows:

| Month & Year | Power Usage (kWh) | Billed Amount (USD) |
|---|---|---|
| January 2021 | 392 | 76.15 |
| February 2021 | 3,265 | 468.59 |
| March 2021 | 9,853 | 1,395.32 |
| April 2021 | 24,891 | 3,510.70 |
| May 2021 | 39,637 | 5,585.01 |
| June 2021 | 32,947 | 4,643.93 |
| July 2021 | 962 | 144.63 |
| August 2021 | 69,469 | 10,171.83 |
| September 2021 | 39,600 | 6,272.22 |
| October 2021 | 46,113 | 7,302.24 |
| November 2021 | 37,165 | 5,887.13 |
| December 2021 | 38,711 | 6,131.63 |
| January 2022 | 57,652 | 10,820.18 |

31.     Based on information and opinions provided to me by the federal law enforcement agents involved in the investigation, the electrical consumption at Bucksport, 1403 Bucksmills Road, was consistent with large-scale illegal marijuana cultivation, due to the large amounts of electrical power needed to support indoor marijuana cultivation, including the use of artificial lighting, heat pumps, distribution fans, air conditioners and humidifiers.

32.     An online NCIC records check performed by the U.S. Attorney's Office's contract Forfeiture Financial Specialist shows that CHAO YING ZHANG

holds a New York State Driver's License issued on August 30, 2022, expiring on October 17, 2026. In support of the KSB mortgage loan, CHAO YING ZHANG provided as identification a New York State Driver's License issued on October 12, 2018, expiring on October 17, 2026.

33.   On about February 2, 2022, a severe house fire destroyed the residence at Bucksport, 1403 Bucksmills Road. The Office of the State Fire Marshal conducted an extensive on-site investigation, as well as telephonic and in-person interviews of CHAO YING ZHANG and others. The Office of the State Fire Marshal documented that the residence was a large-scale marijuana cultivation operation, photographed trash bags full of marijuana clippings, and located grow lamps and fertilizers on the premises. When questioned by a Fire Marshal Senior Investigator, CHAO YING ZHANG stated as follows, in sum and substance:

      a.   CHAO YING ZHANG purchased Bucksport, 1403 Bucksmills Road, as an investment property. He had never resided there. He rented it to someone for $3,500 a month.

      b.   CHAO YING ZHANG lived with his mother and father in New York, where he was employed doing HVAC work.

      c.   CHAO YING ZHANG borrowed the money he used to make the down payment to purchase Bucksport, 1403 Bucksmills Road.

34.   On February 2, 2024, HSI Special Agent Daniel Zaehringer conducted a video teleconference interview of the Chief Operating Officer of KSB. KSB's Chief Operating Officer stated as follows, in sum and substance:

a.   The 1003 Application "Acknowledgment and Agreement" representations concerning the truth and accuracy of the information provided is important to KSB.

b.   KSB finds the statements made in residential loan applications important to the loan process and relies on them.

c.   An answer of "Yes" to the question, "Do you intend to occupy the property as your primary residence?," is important to KSB's mortgage loan process, because a primary residence is less risky than an investment property.

d.   KSB offered more favorable interest rates for a primary residence as opposed to an investment property. Primary residence loans often have fixed rates and have a far more favorable rate, whereas an investment property is an adjustable rate and not as favorable.

e.   An answer of "No" to the question, "Is any part of the down payment borrowed?," is important to KSB's mortgage loan process, because it impacts the borrower's overall debt to income ratio.

35.   Financial records obtained from JPMC show that CHAOYING ZHANG has held the Subject Account as sole signatory since February 2012.

36.   The JPMC statements for the Subject Account for November 2023 show a beginning balance of $3,105.43 and an ending balance of $4,368.27.

13

37.     The JPMC statements for the Subject Account for December 2023 show a beginning balance of $4,368.27, but an ending balance of $56,752.98. A Deposit Notation dated December 6, 2023, shows a "Fedwire Credit" to the Subject Account made via Camden National Bank through Christopher K. Ring, a local attorney and closing agent with an office in Newport, Maine.

38.     Business records were obtained from Attorney Ring concerning the transaction. Such records show as follows:

a.     On November 23, 2023, CHAOYING ZHANG entered into a Purchase and Sale Agreement to sell Bucksport, 1403 Bucksmills Road.

b.     On December 1, 2023, CHAOYING ZHANG completed and certified an Identification Affidavit containing his personal identifying information, including a copy of his New York State Driver's License.

c.     As shown by a HUD-1 Settlement Statement, the sale and closing for Bucksport, 1403 Bucksmills Road, occurred on December 5, 2023, with Ring Law acting as settlement agent in Newport, Maine.

d.     CHAOYING ZHANG executed and granted a warranty deed conveying Bucksport, 1403 Bucksmills Road.

e.     CHAOYING ZHANG's Subject Account number and JPMC routing number were provided.

f.     Camden National Bank provided a confirmation email to Attorney Ring dated December 6, 2023, providing notice of

an outgoing wire transfer in the amount of $53,868.12 to

CHAOYING ZHANG.

39.     The most recent JPMC statements for the Subject Account, March

2024, show a beginning balance of $56,236.40 and an ending balance of

$55,533.37.

## **CONCLUSION**

40.     Based on the foregoing, I submit that this Affidavit supports a

finding of probable cause for a warrant to issue authorizing the **seizure of up to**

**$53,868.12 from JPMorgan Chase Account Number 430722392 held**

**in the name of CHAOYING ZHANG**.

41.     The $53,868.12 deposit into the Subject Account is traceable as the

unlawful proceeds or fungible property of, and/or property involved in,

CHAOYING ZHANG's wire fraud and mortgage fraud. Relatedly, CHAOYING

ZHANG's initial purchase of Bucksport, 1403 Bucksmills Road, as well as his

subsequent sale of such property, involved him engaging in monetary

transactions which he knew involved the proceeds of his fraud, with such

proceeds being deposited into the Subject Account as a money laundering

transaction.

42.     Accordingly, it is respectfully requested that the Court issue such

warrant authorizing any authorized federal law enforcement agent or agency, in

its discretion, to seize and therefore recover the funds and other criminal

proceeds that now comprise a portion of the contents of the Subject Account.

I, Pierre Mathieu, hereby swear under oath that the information set forth in this Affidavit is true and correct to the best of my knowledge, information, and belief, and that I make this oath under pains and penalties of perjury.

Dated at Bangor, Maine, this 20th day of May, 2024.

Pierre Mathieu
Special Agent
Homeland Security Investigations

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: **May 20 2024**

City and state: _____ Bangor, ME _____

_____
Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title

16